**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DARIUS DOMINIQUE SPENCER,

      Petitioner,                      Civil No. 2:19-CV-12413
                                      HONORABLE VICTORIA A. ROBERTS
v.                                 UNITED STATES DISTRICT JUDGE

PAT WARREN,

      Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS**
**CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,**
**AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

Darius Dominique Spencer, ("Petitioner"), confined at the Macomb Correctional

Facility in New Haven, Michigan, filed a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254, through counsel, Stuart G. Friedman.   Petitioner challenges his

conviction for armed robbery, M.C.L.A. 750.529, two counts of assault with intent to rob

while armed, M.C.L.A. 750.89, felon in possession of a firearm, M.C.L.A. 750.224f,

bribing a witness, M.C.L.A. 750.122(7)(B), possession of a firearm in the commission of

a felony. M.C.L.A. 750.227b, and being a second habitual offender, M.C.L.A. 769.10.

For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I.  Background

A jury convicted Petitioner in Jackson County Circuit Court.  This Court recites

verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are

presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v.*

*Smith*, 581 F. 3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from his participation in the robbery of a gas station in Jackson, Michigan. Evidence at trial indicated that four men—John Weidman, Joshua Mitchell, Trevante Belcher, and defendant—conspired to rob the gas station. Weidman testified pursuant to a plea agreement whereby he pleaded guilty to the armed robbery, assault with intent to rob while armed, and conspiracy charges, in exchange for his testimony against his codefendants and dismissal of a felony-firearm charge and habitual offender enhancement.
>
> Weidman testified that on the night of the robbery offense, defendant phoned him and told him that he had a proposition for him. Weidman later got into defendant's vehicle, a gray Kia. Defendant was the driver and Mitchell was in the front passenger seat. Weidman and Belcher were in the backseat. Defendant proposed that they rob the gas station, which he described as a "quick and easy" robbery. According to Weidman, Mitchell gave him a gun to use during the robbery. A mask was also provided. After being dropped off a short distance from the gas station, Weidman walked to the gas station and went inside wearing a mask and gloves. Weidman testified that he aimed the gun at the clerk and asked for the money. When Weidman cocked the gun, a bullet fell out, onto the floor. As Weidman looked for the bullet, the clerk ran out the door. Unable to find the bullet, Weidman ran in the opposite direction and called defendant to pick him up. The gray Kia with the same passengers sitting in the same configuration picked Weidman up a couple of minutes later.
>
> As the Kia was driven away from the vicinity of the gas station, a police car began to follow it and eventually activated its lights after the Kia rolled through a stop sign. The Kia accelerated and continued for a while, but it eventually stopped. Following a foot chase, Weidman was apprehended by police. While the foot chase was ongoing, the Kia drove away. A different police officer subsequently observed the Kia, in the same general area, with its driver's door open and a person running away from the vehicle. The officer chased and apprehended the person, who was identified as Mitchell.
>
> Police officers recovered a .9 millimeter bullet from inside the gas station. A .9 millimeter handgun was found in the backyard of a residence near where the officers had been chasing the suspects. It was later determined that the gun had been reported lost in Kentucky. Police also collected a mask and a pair of gloves from the rear passenger seat of the Kia, a Michigan driver's

license for Mitchell from the center console in the vehicle, a small bag of marijuana from the driver's side floorboard, and rental car paperwork for the Kia that revealed it had been rented in Radcliff, Kentucky. DNA evidence linked Mitchell to the gun. Defendant's DNA matched DNA on the steering wheel of the Kia. Telephone records revealed that the cell phone attached to the number that Weidman had been dialing to call defendant before and after the robbery had been in Kentucky and that the phone moved from Kentucky, to Indiana, to Michigan, eventually using a cell tower in Jackson on the day of the robbery.

According to the victim, defendant came into the gas station the day after the robbery and told the victim that he knew who committed the robbery and showed him a picture of that person from Facebook. Defendant told the victim that his friend had nothing to do with the robbery and offered him $1,500 to "not go to court." The victim understood that defendant was referring to Mitchell. Defendant was ultimately arrested at a residence owned by Mitchell's relative.

*People v. Spencer*, No. 336605, 2018 WL 385073, at *1–2 (Mich. Ct. App. Jan. 11, 2018); *lv. den.* 501 Mich. 1083, 911 N.W.2d 723 (2018).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) the prosecutor committed misconduct in his closing argument, (2) trial counsel was ineffective for failing to object to the prosecutor's misconduct, and (3) the judge erred in dismissing a deliberating juror and replacing her with an alternate; the judge should have declared a mistrial after that juror exposed the jury to extrinsic information.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to

any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

>    (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>    (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

 "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.,* at 103.  A habeas petitioner

4

should be denied relief as long as it is within the "realm of possibility" that fairminded

jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S.

Ct. 1149, 1152 (2016).

The Michigan Court of Appeals reviewed and rejected Petitioner's prosecutorial

misconduct claim under a plain error standard. The AEDPA deference applies to any

underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v.*

*Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017). [1]

### III. Discussion

**A. Claims # 1 and # 2. The prosecutorial misconduct/ineffective assistance of counsel claims.**

The Court discusses Petitioner's two claims together for clarity. Petitioner claims

he was denied a fair trial when the prosecutor committed misconduct in his closing

argument; trial counsel was ineffective for failing to object.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."

*Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d

487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a

criminal defendant's constitutional rights only if they "'so infected the trial with unfairness

as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477

---

[1] Respondent urges this Court to procedurally default the claim. Petitioner argues in his second claim that counsel was ineffective for failing to object. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). The cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claim; it is easier to consider the merits of the prosecutorial misconduct claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was

so egregious as to render the entire trial fundamentally unfair based on the totality of the

circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  To obtain habeas relief on

a prosecutorial misconduct claim, a habeas petitioner must show that the state court's

rejection of his or her prosecutorial misconduct claim "was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any

possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48

(2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner claims that the prosecutor misled the jury during her rebuttal closing

argument about the benefits of co-defendant Weidman's plea agreement by stating that

Weidman was not receiving anything for his testimony and that a felony-firearm charge is

a "throwaway charge."

> The Michigan Court of Appeals rejected the claim at length:

> In this case, Weidman testified at trial that he robbed the gas station and that
> he was offered a plea agreement in exchange for his testimony. The jury was
> informed during the prosecutor's opening statement that a codefendant, who
> had been offered a plea agreement, would be testifying. During his
> testimony, Weidman explained the terms of the agreement, acknowledging
> that his plea involved the dismissal of a felony-firearm charge and a habitual
> offender notice. He also stated that his attorney advised him not to accept the
> agreement because it was "a sucky deal." According to Weidman, "it really
> wasn't going to benefit [him] to testify against the Codefendants." During
> closing arguments, defense counsel challenged Weidman's credibility,
> asserting that Weidman was "trying to keep himself out of trouble" or to at
> least "lessen the consequences against him." In response, during the
> prosecutor's rebuttal closing argument, she remarked:

Now, don't get me wrong, I have no sympathy for John Weidman whatsoever, we told you what his deal was going to be. It's not a good deal, *he's not getting off of anything, he's still pleading to the armed robbery charges, he's getting a felony firearm charge, a throwaway charge.* He said himself, his attorney told him to not take the deal. His attorney told him it is not a good deal, it's not worth it. *We're not giving him anything.* He doesn't have much to gain by doing what he's doing .... [Emphasis added.]

Considering the prosecutor's comments, we are troubled by the prosecutor's statement that felony-firearm is a "throwaway charge" and that the dismissal of this charge as well as dismissal of the habitual offender enhancement can be equated with "not giving [Weidman] anything." Such an assertion is not accurate because, as the prosecutor well knows, felony-firearm carries a mandatory two-year consecutive sentence. See MCL 750.227b(1) and (3). We do not think that two years in prison can reasonably be characterized as nothing. Likewise, the sentencing enhancement affects the calculation of the guidelines. See MCL 769.10; MCL 777.21(3)(a). Plainly, the agreement to dismiss the felony-firearm charge as well as the sentencing enhancement involves a benefit that the prosecution "gave" Weidman in exchange for his plea. To state otherwise was inaccurate and improper.

However, while specific portions of the prosecutor's arguments regarding Weidman's plea were improper, this error was not outcome determinative. When the prosecutor's remarks are considered as a whole and in the context of the evidence presented at trial, it is clear that the jury was made aware that Weidman received a deal in exchange for his testimony. In this regard, the prosecutor stated that the jury was told "what his deal was going to be," that "he's still pleading to the armed robbery charges," that Weidman's had been advised not to accept the deal because it was not "a good deal," and that he did not have "much to gain." We see nothing inappropriate in the prosecutor's more restrained argument that Weidman did not receive a "good deal," and these more temperate arguments regarding the nature of Weidman's plea make plain that, while Weidman still faced significant consequences and he did not have "much to gain," he did receive a deal in exchange for his testimony. These assertions were also based on the evidence presented. Weidman testified that he had been advised not to take the deal and he asserted that "it really wasn't going to benefit" him to testify against defendant. Further, the jury knew that Weidman was charged with armed robbery, assault with intent to rob while armed, conspiracy to commit assault with intent to rob while armed, and felony-firearm, and that he was testifying

7

pursuant to a plea agreement that involved dismissal of the felony-firearm charge and the habitual offender information in exchange for Weidman's testimony and his plea of guilty to armed robbery, assault with intent to rob while armed, and conspiracy.

Because the jury was specifically told the terms of the plea agreement, any mischaracterization of the terms of the plea agreement by the prosecutor during rebuttal did not affect the outcome of the proceedings. Further, the trial court properly instructed the jury that "[t]he lawyers' statements and arguments are not evidence" and are "only meant to help you understand the evidence in each side's legal theories," and that "[y]ou should only accept things the lawyers say that are supported by the evidence and by your own common sense and general knowledge." "[J]urors are presumed to follow their instructions," and these instructions were sufficient to cure the prejudicial effect of the prosecutor's statements. In these circumstances, any misstatement by the prosecutor did not affect the outcome of the proceeding, and defendant has not shown outcome determinative plain error.

*People v. Spencer*, 2018 WL 385073, at * 2–3 (emphasis original)(internal citations omitted).

This Court was unable to find any federal or state cases that addressed a prosecutor's misrepresentation of a cooperating witness's plea agreement. However, in a somewhat analogous situation, the Sixth Circuit held that a prosecutor's failure to disclose plea bargains with witnesses was not material, within the meaning of *Brady v. Maryland,* 373 U.S. 83 (1963), when the jury was made fully aware, through cross-examination and defense counsel's closing argument, of the witnesses' motivation for testifying, *i.e.*, their hope of obtaining favorable treatment in their own cases. *See Williams v. Coyle,* 260 F. 3d 684, 708 (6th Cir. 2001). The Sixth Circuit did not believe that evidence of the actual plea bargain with the prosecutor would have given the jury a greater reason to question the

veracity of the cooperating witnesses' testimony, so as to undermine confidence in the outcome of the trial. *Id.*

The Michigan Court of Appeals reasonably concluded that the prosecutor's misleading statements about the plea agreement with Mr. Weidman, while improper, did not reach the level of a due process violation. The jury was made aware by the prosecutor in his opening statement, by Mr. Weidman when he testified, and by defense counsel in his closing argument that Mr. Weidman was testifying against Petitioner in exchange for a plea agreement. The jury was aware that Mr. Weidman testified in the hope of receiving favorable treatment. The jury had ample basis to question Mr. Weidman's credibility even with the prosecutor's misleading statement. The Michigan Court of Appeals did not unreasonably reject Petitioner's prosecutorial misconduct claim; he is not entitled to relief.

Petitioner argues he was denied the effective assistance of trial counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his or her trial counsel in failing to object to the prosecutor's improper questions and arguments, there is

a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,*

271 F. 3d 239, 245 (6th Cir. 2001). The prosecutor's comments did not deprive petitioner

of a fundamentally fair trial; Petitioner is unable to establish that he was prejudiced by

counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F. 3d 501, 528 (6th

Cir. 2006).  The Court rejects the ineffective assistance of counsel claim.

### B. Claim # 3.  The juror replacement claim.

Petitioner argues that the judge erred when he removed a juror during deliberations

and replaced the juror with an alternate. Petitioner claims that the juror was removed

because she was a lone holdout who wanted to acquit Petitioner.  Petitioner also claims that

the judge should have granted his motion for a mistrial because the dismissed juror exposed

the jury to extrinsic evidence.

The Michigan Court of Appeals rejected petitioner's claim:

In this case, defendant characterizes the dismissed juror as a lone holdout, who was dismissed merely because she was unprepared to convict defendant and the other 11 jurors had grown frustrated with her viewpoint. In actuality, the record establishes that the juror in question was acquainted with one of the police officers who testified at trial. Based on her own experiences with this officer, the juror had concerns about his credibility because he had lied to her in the past. In violation of the trial court's instruction to consider only the evidence admitted at trial, the juror disclosed her personal experience with the officer to the other jurors. In particular, the jury sent the trial court a note stating: "One Juror believes one of the officers lied to during [sic] testimony because this particular officer lied to this particular juror in the past. The other (11) eleven jurors are concerned about this jurors [sic] bias and not being able to reach a decision." The trial court questioned the juror and she acknowledged that, when the officer testified, she realized that she knew him and that he had lied to her in the past. She also admitted that she told the other jurors about this incident. The trial court then removed the juror because she brought "outside extrinsic evidence into the jury room." In short, it is clear from the record that the trial court removed the juror, not because of her views on the merits of the case, but because she violated the trial

court's instructions and improperly introduced extrinsic evidence into the jury room. Dismissing the juror on this basis was not improper.

Having dismissed a juror, the trial court had the authority to recall an alternate, who had also heard the case, to replace the juror who had been removed. As required by MCR 6.411, after replacing the dismissed juror with an alternate, the trial court instructed the jury to begin their deliberations anew. These procedures involving the use of an alternate juror ensured that defendant's right to have his case decided by an impartial jury as chosen was protected.

*People v. Spencer*, 2018 WL 385073, at * 5–6 (internal citations and footnote omitted).

M.C.R. 6.411 states in pertinent part:

The court may retain the alternate jurors during deliberations. If the court does so, it shall instruct the alternate jurors not to discuss the case with any other person until the jury completes its deliberations and is discharged. If an alternate juror replaces a juror after the jury retires to consider its verdict, the court shall instruct the jury to begin its deliberations anew.

M.C.R. 6.411 is similar to Fed. R. Crim P. 24(c)(3).

Neither M.C.R. 6.411 nor Fed. R. Crim. P. 24(c)(3) are constitutionally mandated. *See U.S. v. Ross,* 323 F. App'x. 773, 775 (11th Cir. 2009); *People v. Dry Land Marina*, 175 Mich. App. 322, 328-29; 437 N.W. 2d 391 (1989)(involving M.C.R. 6.411's predecessor rule). To the extent that the trial judge violated M.C.R. 6.411 in replacing the juror, Petitioner would not be entitled to habeas relief on his claim. *See e.g. Claudio v. Snyder*, 68 F. 3d 1573, 1575 (3rd Cir. 1995). Moreover, "[T]he Supreme Court has not specifically ruled on the constitutionality of substituting an alternate juror after jury deliberations have begun." *Id.* Most federal courts that have addressed the issue have held

11

that the "substitution of an alternate juror in place of a regular juror after deliberations have

begun does not violate the Constitution, so long as the judge instructs the reconstituted jury

to begin its deliberations anew and the defendant is not prejudiced by the substitution." *Id.*

(collecting cases); *See also United States v. Street*, 614 F. 3d 228, 235 (6th Cir. 2010).  A

habeas petitioner must demonstrate that he or she was prejudiced by the replacement of a

seated juror with an alternate to prevail on his or her claim. *See Hughes v. Phillips,* 457 F.

Supp. 2d 343, 368 (S.D.N.Y. 2006).

Petitioner failed to show that the judge erred in removing this juror and replacing

her with an alternate juror.  The judge found that the juror violated his instructions and had

introduced extrinsic evidence, which is a valid basis to remove a deliberating juror. *See*

*United States v. Edwards*, 303 F.3d 606, 631-32 (5th Cir. 2002)(dismissal of juror

occurring after commencement of deliberation was not an abuse of discretion where it was

based on juror's display of a lack of candor and an inability to follow instructions when the

juror introduced extrinsic materials into the jury room). Moreover, assuming that the juror

was a hold-out for acquittal, "hold-out jurors are not immune from dismissal based upon

just cause." *Id.,* at 634.

Petitioner argues that the judge should have granted a mistrial after the remaining

jurors were exposed to the extrinsic information.

The Michigan Court of Appeals rejected the claim, in part finding any error to be

harmless:

> In this case, while the jury appears to have been exposed to extrinsic evidence
> regarding the dismissed juror's prior personal experience with one of the
> testifying police officers, defendant has not shown "a real and substantial

12

possibility" that this extraneous influence could have affected the jury. The extraneous influence related to the credibility of one of the testifying police officers. However, the credibility of this particular officer was not a material aspect of the case. The officer's involvement consisted of arresting Mitchell. He did not even see defendant on the night of the robbery. Additionally, the court questioned the remaining jurors to determine if the extrinsic information introduced by the dismissed juror would affect their ability to render a fair and impartial verdict, based on the evidence properly admitted at trial. The jurors indicated that the extrinsic evidence would not affect them. Thus, there is no basis for concluding that the extrinsic information had "a real and substantial possibility" of influencing the jury's verdict.

*People v. Spencer*, 2018 WL 385073, at * 6.

"[T]he Sixth Amendment does not obligate state trial courts to investigate every allegation of bias or juror misconduct." *Williams v. Bagley,* 380 F. 3d 932, 949 (6th Cir. 2004)(citing *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991)).  Instead, a trial court is constitutionally required to inquire about potential juror bias or misconduct only when "under the circumstances presented there was a constitutionally significant likelihood that, absent questioning about [the potential bias], the jurors would not be as indifferent as (they stand) unsworn," *Id;* (quoting *Ristaino v. Ross*, 424 U.S. 589, 596 (1976)(internal quotation marks omitted), or when "a trial court is presented with evidence that an extrinsic influence has reached the jury which has a reasonable potential for tainting that jury." *Id.* (quoting *Nevers v. Killinger* 169 F. 3d 352, 373 (6th Cir. 1999)).  Moreover, "[s]ince the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion." *United States v. Rigsby,* 45 F. 3d 120, 125 (6th Cir. 1995)(quoting *United States v. Shackelford*, 777 F. 2d 1141, 1145 (6th Cir. 1985)).

Finally, in a habeas corpus case, a state court's findings on whether, and how, an extraneous matter affected jury deliberations "deserve[ ] a 'high measure of deference.'" *Mahoney v. Vondergritt,* 938 F. 2d 1490, 1492(1st Cir. 1991)(quoting *Rushen v. Spain*, 464 U.S. 114, 120 (1983)).

The question of whether a trial court has seated a fair and impartial jury is a factual one, involving an assessment of credibility. *Gall v. Parker,* 231 F. 3d 265, 308 (6th Cir. 2000)(citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)).  A state trial court's finding on the impartiality of a juror or a jury is a factual finding that is presumed correct under § 2254 unless a habeas petitioner can prove otherwise by convincing evidence. *Id.* at 334. The standard of review on habeas does not permit a court to substitute its view of possible juror bias for the state court's view; a habeas court may only overturn the state court's findings of juror impartiality if those findings were manifestly erroneous. *See DeLisle v Rivers*, 161 F. 3d 370, 382 (6th Cir. 1998).

As a general rule, a habeas petitioner is not entitled to habeas relief if the jurors affirm that they were able to put aside the extraneous information and render a verdict based on the evidence presented in court. *Williams v. Bagley*, 380 F.3d at 945.

The remaining eleven jurors informed the judge that the extrinsic information about the police officer would not affect their verdict. The trial judge's findings regarding the jurors' ability to render a verdict based on the evidence presented as opposed to the extraneous information are findings of fact which are presumptively correct unless rebutted by clear and convincing evidence.  Petitioner failed to offer any evidence to rebut the

14

judge's factual findings.   Petitioner failed to show that extrinsic information about the officer affected the jurors' verdict.

Moreover, claims concerning the effect of extraneous influences upon the jury during deliberations are subject to a harmless error analysis. See *Mason v. Mitchell*, 320 F.3d 604, 638 (6th Cir. 2003).   On direct review of a conviction, a constitutional error is considered harmless only if the reviewing court finds it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967).   In *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003)(per curiam), the Supreme Court held that habeas relief would be appropriate only if a habeas petitioner could show that a state court applied harmless error review in an "'objectively unreasonable' manner."

However, in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief should be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.   "Citing concerns about finality, comity, and federalism," the Supreme Court in *Brecht* "rejected the *Chapman* standard in favor of the more forgiving standard of review applied to nonconstitutional errors on direct appeal from federal convictions." *Fry v. Pliler*, 551 U.S. 112, 116 (2007)(citing *Kotteakos v. United States*, 328 U.S. 750 (1946)).

Petitioner seeks federal habeas corpus relief and thus must meet the *Brecht* standard, but that does not mean "that a state court's harmlessness determination has no significance under *Brecht*." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015).   Where a state court uses the

15

*Chapman* standard to determine that an error was harmless beyond a reasonable doubt, a federal court cannot grant habeas relief unless the state court applied the *Chapman* harmless error standard in an objectively unreasonable manner. *Id.* at 2198-99.

The Michigan Court of Appeals reasonably concluded that any information about the police officer was harmless error in light of the fact that he did not arrest Petitioner or offer any incriminating evidence against him. Moreover, any allegation that this officer was dishonest would only have redounded to Petitioner's benefit. Petitioner is not entitled to habeas relief because the Michigan Court of Appeals reasonably determined that extrinsic evidence about the officer's alleged dishonestly was harmless error. *See Davis v. Ayala,* 135 S. Ct. at 2198-99.

### IV.  Conclusion

The Court denies the petition for writ of habeas corpus.  The Court also denies a certificate of appealability to Petitioner.  To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue

16

or deny a certificate of appealability when it enters a final order adverse to the applicant."
Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability; he failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although the Court denies a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is lower than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous.  Therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  ORDER

**The Court DENIES** the Petition for Writ of Habeas Corpus and a Certificate of Appealability**.**

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

s/ Victoria A. Roberts
**HON. VICTORIA A. ROBERTS**
Dated: 9/22/2020                    **UNITED STATES DISTRICT JUDGE**

17